UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   13-cv-00285-WYD-BNB

STEPHEN W. BRISCOE;
CONTINUUM HEALTH PARTNERSHIPS, INC.;
CONTINUUM HEALTH MANAGEMENT, LLC; and,
MOUNTAIN STATES HEALTH PROPERTIES, LLC,

      Plaintiffs,

v.

KATHLEEN SEBELIUS, in her official capacity as Secretary of the United States
      Department of Health and Human Services;
SETH D. HARRIS, in his official capacity as Acting Secretary of the United States
      Department of Labor;
NEAL WOLIN, in his official capacity as Acting Secretary of the United States
      Department of the Treasury;
UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES;
UNITED STATES DEPARTMENT OF LABOR; and,
UNITED STATES DEPARTMENT OF THE TREASURY,

      Defendants.

---

## ORDER

---

THIS MATTER is before the Court on plaintiffs' Motion For Temporary

Restraining Order [ECF No. 16], filed on February 19, 2013.  The defendants ("the

Government") responded on February 21, 2013, and the plaintiffs filed a reply on

February 22, 2013.  On February 22, 2013, the American Civil Liberties Union and The

American Civil Liberties Union Foundation of Colorado filed an *amicus curiae* brief [ECF

No. 23] opposing the plaintiffs' motion for a temporary restraining order.  For the

reasons discussed below, the motion is DENIED.

**BACKGROUND**

On February 19, 2013, plaintiffs, Stephen W. Briscoe, Continuum Health Partnerships, Inc., Continuum Health Management, LLC, and Mountain States Health Properties, LLC, filed a Motion for Temporary Restraining Order ("TRO") [ECF No. 16], arguing that the Patient Protection and Affordable Health Care Act ("AHCA"), Pub. L. No. 111-148, 124 Stat. 119 (2010), violates their religious rights because it forces them to provide insurance plans providing free contraceptives, abortifacients, and sterilization procedures to women.  The plaintiffs allege that the AHCA violates:  (1) the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb to bb-4; and, (2) the Free Exercise, Establishment, and Free Speech Clauses of the First Amendment to the Constitution of the United States.

Based on the pleadings filed by the plaintiffs, Briscoe is an Evangelical Christian and owns Continuum Health Partnerships, Inc., Continuum Health Management, LLC, and Mountain States Health Properties, LLC.  Briscoe's secular, for-profit companies manage and operate senior care assisted living centers and skilled nursing facilities. Briscoe is the sole member and manager of Continuum Health Management, LLC and Mountain States Health Properties, LLC.  Briscoe is also the lone shareholder of Continuum Health Partnerships, Inc.

Briscoe's companies employ over 200 persons and they offer a self-insurance plan.  In January 2013, Briscoe learned that the insurance provided no-cost preventative care for women, including contraceptives, abortifacients, and sterilization procedures as required by the AHCA.  Briscoe contacted his insurance provider and requested that any provision providing such coverage be omitted from his companies'

insurance plan.  The insurance provider stated that the provisions must be included in the plan in order to comply with the AHCA.

Briscoe's self-insurance plan becomes effective April 1, 2013.  The plan must be disclosed to employees between February 26, 2013, and March 1, 2013.  New plan inclusions must be agreed on by March 1, 2013, in order to be included in the plan year beginning April 1, 2013.  Briscoe alleges that his religious beliefs prevent him from including in his companies' insurance plan any provision providing coverage for contraceptives, abortifacients, and sterilization procedures.  Briscoe alleges that the AHCA's mandate for the inclusion of such provisions and punitive penalties for not including them, violate his religious rights and his right to free speech.  Briscoe filed this motion to prevent the inclusion of such provisions in his insurance plan for the April 1, 2013, plan year.[1]

## ANALYSIS

**A.  The Patient Protection and Affordable Health Care Act ("AHCA"), Pub. L. No. 111-148, 124 Stat. 119 (2010)**

On March 23, 2010, President Barack Obama signed into law the AHCA.  The AHCA contains numerous health care reforms.  Among one of the reforms is a mandate that group health plans must provide no-cost coverage for preventative care and screening for women.  Pursuant to 42 U.S.C. § 300gg-12(a)(4):

> (a) In general. A group health plan and a health insurance issuer offering group or individual health insurance coverage shall, at a minimum provide coverage for and shall not impose any cost sharing requirements for--

> *     *     *     *

---

[1] Briscoe also filed a Motion for Preliminary Injunction [ECF No. 15] on February 15, 2013, advancing identical arguments, which is currently pending.

> (4) with respect to women, such additional preventive care and screenings not described in paragraph (1) as provided for in comprehensive guidelines supported by the Health Resources and Services Administration for purposes of this paragraph.

While the AHCA mandates no-cost coverage for preventative care and screening for women, it does not define or establish what constitutes preventative care and screening for women.  The AHCA delegated this responsibility to the Health Resources and Services Administration ("HRSA"). *See* 42 U.S.C. § 300gg-12(a)(4).  On August 1, 2011, the HRSA adopted Required Health Plan Coverage Guidelines that established the scope of preventative care and screening for women. *See HRSA, Women's Preventative Services:  Required Health Plan Coverage Guidelines*, http://www.hrsa.gov/womensguidelines/ (last visited 2/27/13).  Pursuant to the HRSA's guidelines, preventative care and screening for women includes "[a]ll Food and Drug Administration approved contraceptive methods, sterilization procedures, and patient education and counseling for all women with reproductive capacity." *Id.*  If a group insurance plan fails to provide such care for women, the insurer shall pay a penalty tax of $100 per day "for each day in the noncompliance period with respect to each individual to whom such failure relates." 26 U.S.C. § 4980D(b)(1).

There are three exemptions from the mandate.  First, the mandate does not apply to certain healthcare plans existing on March 23, 2010. *See Interim Final Rules for Group Health Plans and Health Insurance Coverage Relating to Status as a Grandfathered Health Plan Under the Patient Protection and Affordable Care Act*, 75 Fed. Reg. 34538, 34540 (June 17, 2010).  Second, "religious employers" are exempted

from the mandate.[2]   Third, there is a "safe harbor" provision exempting non-profit organizations with religious objections to contraceptive coverage that do not qualify for the religious employer exemption. *See Final Rules for Group Health Plans and Health Insurance Issuers Relating to Coverage of Preventive Services Under the Patient Protection and Affordable Care Act*, 77 Fed. Reg. 8725, 8726-27.

Briscoe's companies do not qualify for any of the three exemptions.  Thus, they are required by law to provide no-cost preventative care and screening for women as defined by the HRSA.

**B.  Legal Standard for Issuance of a Temporary Restraining Order**

The requirements for issuing a TRO mirror the requirements for issuing a preliminary injunction.  In order to obtain a temporary restraining order, a plaintiff must establish:  (1) a substantial likelihood of success on the merits; (2) irreparable harm will ensue if the request for a TRO is denied; (3) the threatened injury outweighs the harm

---

[2] Pursuant to 45 C.F.R. §§ 147.130(a)(1)(iv)(A) and 147.130(a)(1)(iv)(B):

> In developing the binding health plan coverage guidelines specified in this paragraph (a)(1)(iv), the Health Resources and Services Administration shall be informed by evidence and may establish exemptions from such guidelines with respect to group health plans established or maintained by religious employers and health insurance coverage provided in connection with group health plans established or maintained by religious employers with respect to any requirement to cover contraceptive services under such guidelines.
>
> (B) For purposes of this subsection, a "religious employer" is an organization that meets all of the following criteria:
>
> (1) The inculcation of religious values is the purpose of the organization.
>
> (2) The organization primarily employs persons who share the religious tenets of the organization.
>
> (3) The organization serves primarily persons who share the religious tenets of the organization.
>
> (4) The organization is a nonprofit organization as described in section 6033(a)(1) and section 6033(a)(3)(A)(i) or (iii) of the Internal Revenue Code of 1986, as amended.

that the TRO may cause the defendant; and, (4) if issued, the TRO will not adversely affect the public interest. *General Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007).

Certain types of TROs are disfavored and required a heightened standard of proof.  The three types of disfavored TROs are those that:  (1) disturb the status quo; (2) are mandatory as opposed to prohibitory; or, (3) provide the movant substantially all the relief he may recover after a full trial on the merits. *Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001).  In these three situations, the movant must show that the four factors used in determining whether to issue a TRO "weigh heavily and compellingly in [his] favor . . . " *Id.* (citation omitted).  If the TRO does not fall into one of the disfavored categories, and the movant establishes that the latter three factors "tip strongly in his favor, the test is modified." *Okla. ex rel. Okla. Tax Comm'n v. Int'l Registration Plan, Inc.*, 455 F.3d 1107, 1113 (10th Cir. 2006) (quoting *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002)).  Under the modified test, the movant "may meet the requirement for showing success on the merits by showing that questions going to the merits are so serious, substantial, and difficult, and doubtful as to make the issue for litigation and deserving of more deliberate investigation." *Id.* (citation omitted).

Injunctive relief is an "extraordinary remedy." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1252 (10th Cir. 2005) (citation omitted).  Thus, the right to relief must be "clear and unequivocal." *Id.*

The TRO at issue does not fall into the disfavored category.  Further, initial inquiry establishes that the latter three factors do not tip strongly in the plaintiffs' favor and the plaintiffs have not shown that questions going to the merits are so serious,

substantial, difficult, and doubtful as to make the issue for litigation. Thus, I will analyze the plaintiffs' TRO request under the normal standard.

### 1. Substantial Likelihood of Success on the Merits

The plaintiffs argue that the AHCA violates the RFRA and the Free Exercise, Establishment, and Free Speech Clauses of the First Amendment.

### a. Plaintiffs' RFRA Claim

"The genesis of the RFRA lies in a protracted exchange between the Supreme Court and Congress over the proper standard to apply when reviewing laws that burden religion." *United States v. Wilgus*, 638 F.3d 1274, 1279 (10th Cir. 2011). In 1990, the Supreme Court of the United States held that neutral laws of general applicability burdening the exercise of religion are subject to rational-basis scrutiny. *Employment Div. v. Smith*, 494 U.S. 872 (1990). In response to *Smith*, Congress passed the RFRA and stated that its purpose was "to restore the compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398 (1963) and *Wisconsin v. Yoder*, 406 U.S. 205 (1972) and to guarantee its application in all cases where free exercise of religion is substantially burdened." 42 U.S.C. § 2000bb(b)(1). In 1997, the Supreme Court held the RFRA unconstitutional as applied to states. *See City of Boerne v. Flores*, 521 U.S. 507 (1997). However, the RFRA remains constitutional as applied to the federal government. *See United States v. Wilgus*, 638 F.3d 1274, 1279 (10th Cir. 2011).

Pursuant to the RFRA, the "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability . . . " 42 U.S.C. § 2000bb-1(a). However, the RFRA provides an exception. The government may substantially burden a person's exercise of religion if the regulation: (1) is in

furtherance of a compelling governmental interest; and, (2) is the least restrictive means of furthering that compelling governmental interest. *Id.* at § 2000bb-1(b).  Thus, a movant alleging an RFRA violation must first establish that a federal regulation substantially burdens his exercise of religion.  If the movant meets that requirement, the burden then shifts to the government to justify the regulation by showing that it is the least restrictive means of furthering a compelling governmental interest.

### i.  Threshold Issue:  Standing

The Government argues that Continuum Health Partnerships, Inc., Continuum Health Management, LLC, and Mountain States Health Properties, LLC do not have the capacity to bring a claim under the RFRA because they are not a "person" under the RFRA and do not "exercise" religion.

In a recent case with similar facts, Judge Heaton of the United States District Court for the Western District of Oklahoma held that secular, for-profit corporations do not exercise religion and are not persons under the RFRA. *Hobby Lobby Stores, Inc. v. Sebelius*, 870 F. Supp. 2d 1278, 1291 (W.D. Okla. Nov. 19, 2012).  In *Hobby Lobby*, Hobby Lobby Stores, Inc. and Martel, Inc. along with several individual plaintiffs, filed suit against Kathleen Sebelius, Secretary of the United States Department of Health and Human Services, alleging that the AHCA's preventative care mandate violated the First Amendment's Free Exercise Clause and the RFRA.  In analyzing whether the plaintiff corporations had standing to sue under the RFRA, the Court stated that, "[g]eneral business corporations do not, separate and apart from the actions or belief systems of their individual owners or employees, exercise religion.  They do not pray, worship, observe sacraments or take other religiously-motivated actions separate and

apart from the intention and direction of their individual actors." 870 F. Supp. 2d at 1291.

The Court further stated that religious exercise is "purely personal" and "not the

province of a general business corporation." *Id.*  Thus, the Court concluded that Hobby

Lobby Stores, Inc. and Martel, Inc. lacked standing to assert claims under the RFRA. *Id.*

at 1292.  The plaintiffs appealed the decision and a United States Court of Appeals for

the Tenth Circuit motions panel affirmed the district court's ruling. *Hobby Lobby Stores,*

*Inc. v. Sebelius*, 2012 U.S. App. LEXIS 26741 (10th Cir. 2012).  In affirming the district

court, the Tenth Circuit motions panel remained silent on the distinction between

corporate and individual plaintiffs asserting a RFRA claim. 2012 U.S. App. LEXIS 26741

at *8-9, n.4. ("We do not distinguish at this preliminary stage of the proceedings

between the corporate and individual plaintiffs, as their common failure to demonstrate

a substantial likelihood of success on the RFRA prima facie case suffices to dispose of

the motion before us").

 The plaintiffs cite case law from other jurisdictions supporting their argument that

secular, for-profit corporations have capacity to assert RFRA claims. See *Korte v.*

*Sebelius*, 2012 U.S. App. LEXIS 26734, *9 (7th Cir. 2012) ("That the Kortes operate

their business in the corporate form is not dispositive of their claim"); *Tyndale House*

*Publrs., Inc. v. Sebelius*, 2012 U.S. Dist. LEXIS 163965, *23-24 (D. D.C. Nov. 16, 2012)

("Nor is there any dispute that Tyndale's primary owner, the Foundation, can 'exercise

religion' in its own right, given that it is a non-profit religious organization; indeed, the

case law is replete with examples of such organizations asserting cognizable free

exercise and RFRA challenges"); *Monaghan v. Sebelius*, 2012 U.S. Dist. LEXIS

182857, *9 (E.D. Mich. Dec. 30, 2012) ("Therefore, even though the ACA does not

literally apply to Monaghan, the Court is in no position to declare that acting through this company to provide certain health care coverage to his employees does *not* [sic] violate Monaghan's religious beliefs"). *Tyndale* dealt with an admittedly religious organization, rather than a secular organization, which is not the case here.  The Court in *Monaghan* unequivocally stated that it took "no position as to whether DF, as a for-profit business, has an independent right to freely exercise religion." *Monaghan*, 2012 U.S. Dist. LEXIS 182857 at *10.  *Korte* is only the case cited by plaintiffs in which a Court specifically dismissed a corporation's corporate status as a bar to asserting claims under the RFRA.

  I disagree with the Court's analysis in *Korte*.  I find Judge Heaton's analysis in *Hobby Lobby* clear, concise, and persuasive.  Secular, for-profit corporations neither exercise nor practice religion.  Thus, secular, for-profit corporations lack standing to assert an RFRA claim that a federal regulation burdens their "exercise of religion." Therefore, analysis under the RFRA will proceed only as to whether the AHCA mandate violates Briscoe's personal exercise of religion.

### ii.  Substantial Burden

  Briscoe alleges that the AHCA's preventative care mandate substantially burdens the exercise of his religion because it forces the companies he owns to provide contraceptives, abortifacients, and sterilization procedures to women, which runs counter to his Evangelical Christian beliefs.

  Neither the Tenth Circuit nor the Supreme Court has defined "substantial burden" in the context of a RFRA claim.[3]  The present facts dictate that I need not define what

---

[3] In *Abdulhaseeb v. Calbone*, 600 F.3d 1301 (10th Cir. 2010), the Tenth Circuit defined what constitutes a substantial burden in the context of a claim under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5.  The Court stated that:

constitutes a substantial burden under the RFRA.  The AHCA's mandate applies to health insurance issuers, not to Briscoe himself. *Hobby Lobby*, 870 F. Supp. at 1294 ("The mandate in question applies only to Hobby Lobby and Mardel, not to its officers or owners"); *Monaghan*, 2012 U.S. Dist. LEXIS at *9 (stating that the AHCA "does not literally apply to Monaghan [individual plaintiff] . . . ").  Briscoe claims a substantial burden based on what his companies must do, rather than what he himself must do. The AHCA's mandate does not prevent Briscoe from personally exercising his religion: Briscoe is free to worship, pray, and engage in Evangelical Christian religious activities as he pleases.  The AHCA's mandate does not force Briscoe to personally endorse, support, or engage in pro-abortion and pro-contraception activity.  More importantly, the AHCA's mandate does not prevent Briscoe from personally opposing abortion and contraception.  Thus, any burden Briscoe claims on his ability to exercise his religion based on his companies' compliance with the AHCA mandate, is slight and attenuated.

Further, Briscoe's argument implicitly requests that I disregard the distinction between a corporation and its officers and owners.  Briscoe cannot use corporate status to shield himself from liability and at the same use it as a sword to assert an RFRA claim.  The court in *Conestoga Wood Specialties, Inc. v. Sebelius*, 2013 U.S. Dist.

---

> We conclude that a religious exercise is substantially burdened under 42 U.S.C. § 2000cc-1(a) when a government (1) requires participation in an activity prohibited by a sincerely held religious belief, or (2) prevents participation in conduct motivated by a sincerely held religious belief, or (3) places substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief, such as where the government presents the plaintiff with a Hobson's choice--an illusory choice where the only realistically possible course of action trenches on an adherent's sincerely held religious belief.

600 F.3d 1301 at 1315.  I am not aware of any Tenth Circuit decision which explicitly states that this definition applies to an RFRA claim.

LEXIS 4449 (E.D. Pa. Jan. 11, 2013), succinctly explained why recognizing the

corporate status is important when analyzing a RFRA claim.  The Court stated:

> It would be entirely inconsistent to allow the Hahns [the
> individual plaintiffs] to enjoy the benefits of incorporation,
> while simultaneously piercing the corporate veil for the
> limited purpose to challenge these regulations [the AHCA].
> We agree with the Autocam court, which stated that this
> separation between a corporation and its owners "at a
> minimum [ ] means the corporation is not the *alter ego* [sic]
> of its owners for the purposes of religious belief and
> exercise."

2013 U.S. Dist. LEXIS at *27 (quoting *Autocam Corp. v. Sebelius*, 2012 U.S. Dist.

LEXIS 184093, *20 (W.D. Mich. Dec. 24, 2012)).  I agree with the Court in *Conestoga*

*Wood* that a corporation's status as a separate and distinct entity prevents its owner

from asserting a RFRA claim.

Based on the preceding statements, I find that the AHCA's mandate does not

substantially burden Briscoe's exercise of religion and he therefore does not have a

viable RFRA claim.  Because Brisoce's exercise of religion is not substantially

burdened, I need not analyze whether the AHCA's mandate serves a compelling

governmental interest and whether the mandate is the least restrictive means of

furthering that interest.

**b.  Plaintiffs' Free Exercise Claim**

The First Amendment's Free Exercise Clause states that, "Congress shall make

no law . . . prohibiting the free exercise [of religion]." U.S. Const. amend. I.  The purpose

of the Free Exercise Clause is "to secure religious liberty in the individual by prohibiting

any invasions thereof by civil authority." *Sch. Dist. Of Abington Twp. v. Schempp*, 374

U.S. 203, 223 (1963).  "While the First Amendment provides absolute protection to

religious thoughts and beliefs, the [F]ree [E]xercise [C]lause does not prohibit governments from validly regulating religious conduct." *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 649 (10th Cir. 2006) (citing *Reynolds v. United States*, 98 U.S. 145, 164 (1878)).

"Neutral rules of general applicability normally do not raise free exercise concerns even if they incidentally burden a particular religious practice or belief." *Grace United Methodist Church*, 451 F.3d at 649 (citing *Employment Division*, 494 U.S. at 879 (stating that the Free Exercise Clause "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)" (internal quotation omitted))). "Thus, a law that is both neutral and generally applicable need only be rationally related to a legitimate governmental interest to survive a constitutional challenge." *Id.* "[I]f a law that burdens a religious practice is not neutral or generally applicable, it is subject to strict scrutiny, and the burden on religious conduct violates the Free Exercise Clause unless it is narrowly tailored to advance a compelling governmental interest." *Id.* (citing *Church of the Lukumi Babalu Aye*, 508 U.S. at 546).

The plaintiffs argue that the AHCA's mandate is not generally applicable and fails the strict scrutiny test. The plaintiffs argue that the mandate is not generally applicable because it contains several "massive" exemptions: (1) insurance plans that are grandfathered in; (2) small employers who have the option of dropping insurance; (3) religious sects opposed to insurance; and, (4) religious employers. ECF No. 15, p. 19, ¶ 3. The plaintiffs argue that the mandate fails the strict scrutiny test because it does not serve a compelling governmental interest, and if it did, the mandate is not the least

- 13 -

restrictive means of furthering that interest.

As an initial matter, I find as I did under the plaintiffs' RFRA claim, that Continuum Health Partnerships, Inc., Continuum Health Management, LLC, and Mountain States Health Properties, LLC lack standing to assert a Free Exercise Claim because secular, for-profit corporations do not "exercise religion." *See Hobby Lobby*, 870 F. Supp. 2d at 1288 ("emphasis added") ("Hobby Lobby and Mardel are not religious organizations.  Plaintiffs have not cited, and the court has not found, any case concluding that *secular, for-profit corporations such as Hobby Lobby and Mardel have a constitutional right to the free exercise of religion*").

The ACHA's exemptions do not target religion for discriminatory purposes. Rather, the religious employer and safe harbor exemptions recognize and protect the practice of religion:  they protect religious organizations from governmental imposition of regulations that would unconstitutionally burden the exercise of religion.  The grandfather exemption applies equally to secular and non-secular entities:  the point of reference is a date in time, not a religious denomination or practice.  Briscoe cannot point to any AHCA provision that targets religion for discriminatory purposes.  Briscoe's chief complaint is that the exemptions do not cover his companies.  That however, is insufficient to state that a regulation is not neutral and generally applicable.  Thus, I find that the AHCA's mandate is neutral and generally applicable, and as such, the mandate is subject to rational basis scrutiny.  Being the lowest level of scrutiny applied to a constitutional claim, there are no facts to support a finding that the ACHA's mandate is not rationally related to a legitimate governmental interest.  Therefore, Briscoe has not established that the AHCA's mandate violates the Free Exercise Clause.

### c. Plaintiffs' Establishment Clause Claim

The First Amendment's Establishment Clause states that, "Congress shall make no law respecting an establishment of religion . . . " U.S. Const. amend. I.  "At is core, the Establishment Clause enshrines the principle that government may not act in ways that 'aid one religion, aid all religions, or prefer one religion over another." *Weinbaum v. City of Las Cruces*, 541 F.3d 1017, 1029 (10th Cir. 2008) (citations omitted).  "Despite scattered signals to the contrary, the touchstone for Establishment Clause analysis remains the tripartite test set out in Lemon." *Id.* at 1030 (citations omitted).  "To pass constitutional muster [under the Establishment Clause], the governmental [regulation] (1) must have a secular legislative purpose, (2) its principal or primary effect must be one that neither advances nor inhibits religion, and (3) it must not foster an excessive government entanglement with religion." *Id.* (internal quotations and citations omitted).

The plaintiffs argue that the AHCA's religious employer exemption violates the Establishment Clause because it involves an impermissible Government inquiry into what qualifies an employer as "religious."  Pursuant to 45 C.F.R. § 147.130(a)(1)(iv)(B):

> (B) For purposes of this subsection, a "religious employer" is an organization that meets all of the following criteria:
>
> > (1) The inculcation of religious values is the purpose of the organization.
> >
> > (2) The organization primarily employs persons who share the religious tenets of the organization.
> >
> > (3) The organization serves primarily persons who share the religious tenets of the organization.
> >
> > (4) The organization is a nonprofit organization as described in section 6033(a)(1) and section 6033(a)(3)(A)(i) or (iii) of the Internal Revenue Code of 1986, as amended.

The AHCA's mandate does not violate the Establishment Clause because it does not grant any denominational preference or otherwise discriminate amongst religions. The exemption defines religious employer broadly. The definition does not define religious employer by listing *specific types of religious practices* or *specific religious beliefs* that are necessary in order to fall under the exemption. The most specific requirement of the definition is that the employer employ and serve those people who believe in the organization's religious tenets. The AHCA's mandate has a secular purpose, does not advance or inhibit religion, and does not cause excessively entanglement with religion. Thus, there is no violation of the Establishment Clause.

### d.  Plaintiffs' Free Speech Clause Claim

The Free Speech Clause of the First Amendment states that, "Congress shall make no law . . . abridging the freedom of speech . . . " U.S. Const. amend. I. The plaintiffs argue that the AHCA mandate violates the Free Speech Clause by coercing them to provide for speech that is contrary to their religious beliefs.

A threshold issue in analyzing any claim under the Free Speech Clause is whether the alleged conduct qualifies as speech. Here, plaintiffs argue that issuing insurance plans that provide no-cost preventative care for women, including contraception, abortifacients, and sterilization procedures qualifies as speech. The plaintiffs cite no authority and I am not aware of any authority holding that such conduct qualifies as speech so as to trigger First Amendment protection. Therefore, I find that such conduct does not qualify as speech and is not protected by the First Amendment.

**CONCLUSION**

After careful reviewing and analyzing each of the plaintiffs' claims under the first factor for issuing a TRO *i.e.*, substantial likelihood of success on the merits, I find that the plaintiffs have not established that there is a substantial likelihood of success on the merits for their:  (1) RFRA claim; and, (2) Free Exercise, Establishment, and Free Speech Clause claims under the First Amendment.  Therefore, I need not analyze the remaining factors necessary for issuing a TRO because the record before me establishes that issuance of a TRO is not warranted.  Accordingly, it is

ORDERED that the plaintiffs' Motion for a Temporary Restraining Order [ECF No. 16] is **DENIED**.  It is

FURTHER ORDERED that the parties shall file a Joint Status Report **on or before Tuesday**, **March 12**, **2013**, stating whether a Preliminary Injunction Hearing is necessary, and if so, whether supplemental briefing for the hearing is required.

Dated:  February 27, 2013.


BY THE COURT:

/s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior U. S. District Judge